In the Matter of the Application for the DISCIPLINE OF Irving SHAW, an Attorney at Law of the State of Minnesota.

No. C9–79–50289.

Supreme Court of Minnesota.

Dec. 5, 1986.

Bruce Martin, Asst. Director, Lawyers Professional Responsibility Bd., St. Paul, for appellant.

James P. Miley, Bloomington, for respondent.

PER CURIAM.

Irving Shaw, respondent, is 62 years old. He was admitted to practice in Minnesota in 1951. From 1951 through 1972, respondent worked in law firms devoted to general practice. Since 1972, respondent has worked as a sole practitioner in areas of divorce, personal injury and criminal defense. In 1980, respondent was reprimanded and placed on three years' supervised probation by this court. *In re Shaw*, 298 N.W.2d 133 (Minn.1980). This discipline was in response to respondent's misappropriation of client funds. Moreover, since 1975, respondent had failed to maintain a separate fiduciary account for client funds, failed to keep adequate books and records, had not maintained subsidiary ledgers revealing funds held on behalf of clients or made periodic reconciliations of books and records. However, in light of the fact that the misappropriation was a single event, and only a temporary misuse of funds, the lesser penalty of probation was felt warranted.

On May 29, 1984, by order of this court, respondent's probation was extended for 2 years. By stipulation, respondent admitted he had failed, prior to December 1983, to maintain a non-interest bearing trust account and that some of his clients' funds had unintentionally been commingled. The terms of respondent's probation included the requirement that respondent maintain

his trust account in compliance with appropriate rules of professional conduct and "institute appropriate office systems to insure that he does not neglect any client matters and that he abide by the Code of Professional Responsibility * * *."

The evidence of misconduct at issue in this proceeding has been admitted in most details by respondent. Respondent failed to file state income tax returns for the years 1980, 1981, 1982 and 1983 until September 1985, immediately prior to his disciplinary hearing. The automatic extensions respondent requested for each year did not, in any year, extend the filing date more than 6 months. Respondent is also responsible for other relatively more minor acts of misconduct. In December of 1984, January of 1985, and March of 1985, the bank where respondent kept a trust account for his clients debited that account to cover checks cashed by respondent that had been returned for insufficient funds. Respondent had not consented to this procedure and the bank subsequently admitted its mistake. However, because respondent had delegated responsibility for monthly reconciliations to his secretary, he did not learn of these improper debits until April 1985. At that time, respondent took prompt steps to have the money refunded.

In addition, respondent delayed returning a file to a client after that client chose to use a different lawyer to handle a dispute over insurance proceeds. The client requested the file in July of 1984. Respondent did not return the file until February 15, after receiving letters written by the Director of Lawyers Professional Responsibility in August 1984 and February 1985 that asked for a response to the former client's complaints.

Respondent claims that several circumstances extenuated his conduct. First, he notes that he worked extremely hard, handling 250–300 clients a year scattered over several different counties, working 50–80 hours a week. The fatigue this schedule caused was aggravated by respondent's diabetes which caused respondent to feel tired and fatigued whenever he neglected his diet. Other factors leading to respondent's failure to file taxes were the loss of an experienced secretary in 1980 who had been accustomed to compiling income information, respondent's preoccupation with litigation with the state over previous back taxes not at issue here, and the fact that respondent's accountant was a personal friend who failed to give respondent's taxes the close attention that would have been given a regular client.

After reviewing the above evidence, the referee recommended that respondent be indefinitely suspended from the practice of law. We adopt the referee's recommendations.

There are three parts to respondent's misconduct: his failure to file tax returns, his failure to reconcile trust accounts and, thus, rectify a shortfall, and his failure to return client files in a reasonable period of time. The failure to file tax returns is the most serious of the charges. In *In re Bunker*, 294 Minn. 47, 199 N.W.2d 628 (1972), the court considered the case of an attorney whose misconduct consisted solely of failing to file federal, Minnesota, and Iowa state tax returns. While finding probation as appropriate in the instant case, the court stated in unequivocal terms that:

> [F]or violations occurring hereafter, the discipline will consist of either suspension or disbarment. The alternative of granting probation is still reserved by this court in the future, but it will be allowed in only the most extreme, extenuating circumstances, and absent such extreme, extenuating circumstances, the only issue for consideration upon such disciplinary proceedings will be the determination of whether to disbar or suspend the lawyer who is guilty of such a violation.

*Id.*, 294 Minn. at 55, 199 N.W.2d at 632.

This court reaffirmed that failure to file income tax returns is a violation of the Code of Professional Responsibility, which warrants either suspension or disbarment, in *In re Jones*, 383 N.W.2d 686 (Minn.1986). In *Jones*, the court noted that suspension has usually been found the most appropri-

ate discipline in tax misconduct cases. *Id.* at 688. In line with *Bunker* though, *Jones* noted that probation might be imposed in light of extreme, extenuating circumstances.

*Bunker* did not specify what would constitute extreme, extenuating circumstances. In *In re McCallum,* 289 N.W.2d 146 (Minn.1980), the court found that such circumstances existed when the attorney who had not filed state income taxes for 1974 and 1975 was suffering from a disease unknowingly contracted in Mexico which made professional and social activities impossible and led to a severe depressive reaction. There was ample evidence that McCallum's illness and depression were major causes of his misconduct. After he received treatment in 1977, his physical and emotional problems were alleviated. McCallum's other misconduct was neglect of certain estate and guardianship matters. There were no charges of deceit or fraud. McCallum's disciplinary record was otherwise clean and he had made substantial contributions to his community.

In *In re Kerr,* 287 N.W.2d 652 (Minn. 1979), the lawyer Kerr had failed to file federal and state income tax returns for the years 1973, 1974, 1975 and 1976. There were no other charges of professional misconduct or neglect. Kerr was an alcoholic from 1960 to 1973, leaving him poverty stricken. Following his recovery from chronic alcoholism, respondent suffered from a psychological aberration which prevented his filing returns because he was without funds to pay his taxes when due. Kerr's back taxes at the time of the disciplinary hearing had been paid by friends. Notably, in both *McCallum* and *Kerr,* the referee recommended the discipline of probation that was ultimately imposed.

The circumstances that caused respondent to neglect his taxes and his client matters, while similar in some respects to those in *McCallum* and *Kerr,* are essentially less extenuating. Respondent also suffers from a disease—diabetes. If he is not careful with his diet, respondent suffers increased fatigue. Apparently, on two oc-

casions since 1980, respondent has been hospitalized. However, respondent admits that, when he is careful with his diet, he can function perfectly normally.

This court has held that respondents must prove by clear and convincing evidence that a claimed disability mitigates otherwise culpable professional misconduct. Specifically, respondent must show, among other factors, that the disability caused the misconduct. *In re Weyhrich,* 339 N.W.2d 274 (Minn.1983). However, there is no evidence, beyond general allegations of fatigue, that the effects of respondent's diabetes caused him to neglect his taxes or other professional duties.

Respondent cites other factors to excuse his misconduct, including the loss of a secretary experienced in accounting and recordkeeping and preoccupation with personal litigation involving the payment of back taxes to the state. However, the most significant causal factor is apparently overwork. Respondent, a sole practitioner, handled 250 to 300 cases a year, worked 50–80 hours a week, and drove 50,000–70,-000 miles a year making court appearances in widely separated counties. The hectic schedule made it difficult for him to maintain his diet, supervise his secretary's recordkeeping or take the time to attend to personal matters such as getting his taxes filed.

Respondent explains his busy pace by his desire to continue serving the numerous persons who request his help who could not, perhaps, afford a better paid attorney. However, in *In re Gubbins,* 380 N.W.2d 810 (Minn.1986), this court held that "preoccupation with trying cases [cannot] be deemed justification for neglect of proper office management practices." *Id.* at 812. Moreover, unlike other cases where extreme, extenuating circumstances have been found, respondent's neglect of his personal and professional responsibilities comes while he is on probation for similar neglect. As the referee noted, though the previous probationary periods did not arise from income tax violations, "if probation is to be successful it must lead to a renewed

commitment by the subject attorney to comprehensive ethical and professional behavior, not merely the correction of designated past transgressions." In addition, respondent's failure to monitor adequately his trust accounts or to respond promptly to a client's request for a file, though not serious in themselves, demonstrate that his earlier problems with maintaining correct office procedures have not been corrected during his term of probation.

Although respondent acknowledged in court his blame for not filing taxes and promised to "do what I can" to ensure timely filing, his promises to reform his overall problems with office procedure lack specificity and resolve. Respondent said:

> Well, the only thing I can do is to make more time for my personal affairs like income taxes and reduce the quantity of business and raise my prices which I hate to do. * * * And what I intend to do is file my returns on time. That's the meat of it there. But other than that I would have to slow down some. I'm going to quit taking the losing cases so to speak from a financial standpoint.

What, then, is the appropriate sanction for a lawyer who has practiced for the past 35 years and who has had no disciplinary problems while in group practice, but who, after becoming a solo practitioner, has been before this court twice previously on disciplinary matters for violation of the Rules of Professional Responsibility? His recent infractions have not damaged any clients, but his continuing pattern of neglect, despite the admonitions of this court, bring him back a third time.

In *In re Carey*, 380 N.W.2d 806 (Minn. 1986), it was stated that: "This court orders disbarment * * * only when there is a continuing pattern of gross neglect of clients, misrepresentations to court and other patterns of misconduct which constitute a great danger from which the public needs immediate protection." *Id.* at 809.

Respondent's conduct, while demonstrating a continuing pattern of neglect, fails to rise to the level of moral turpitude or mendacity described in *Carey*. Again, the referee probably said it best:

> Respondent's acts of misconduct were not caused by greed, malice, or any predatory instincts, but were the unfortunate results of Respondent's inability to assume responsibility for his office practices and personal obligations. The picture presented is not one of a person who should never have been granted the privilege of the bar, but of a person whose capacity to remain at the bar has waned. One's reaction to his disciplinary violations is not outrage or contempt, but sadness and regret.

We hereby order the following sanctions as and for discipline in these proceedings:

1. Irving Shaw is hereby suspended from the practice of law indefinitely, commencing from the date of this judgment.

2. Irving Shaw may not apply for reinstatement to the practice of law until at least one year has passed from the date of this judgment.

3. Irving Shaw may apply for reinstatement after one year has elapsed provided he has met the following conditions:

a. He pay $500 to the Lawyers Professional Responsibility Board pursuant to L.Prof.Resp.R. 24(a);

b. He submit proof of having satisfied L.Prof.Resp.R. 18(e) and 26; and

c. He submit proof of having taken a CLE course on law office management between the date of suspension and the date he applies for readmission to the bar.