**In the Matter of the Application for the DISCIPLINE OF Paris DonRay GETTY, an Attorney at Law of the State of Minnesota.**

No. C8–85–2372.

Supreme Court of Minnesota.

March 6, 1987.

William J. Wernz, Director of Lawyers Professional Responsibility Bd., St. Paul, for appellant.

Jack Nordby, Minneapolis, for respondent.

PER CURIAM.

This action is before this court on petition of the director of the Lawyers Professional Responsibility Board for the discipline of respondent Paris DonRay Getty. The referee appointed by this court, after an evidentiary hearing on the director's charges, found Getty guilty of multiple acts of misconduct and recommended sanctions of a reprimand, costs and a 60-day suspension. Getty challenges the referee's recommendations. We affirm the referee's findings, but decline to order a suspension.

Respondent Paris DonRay Getty has been admitted to the practice of law in the State of Minnesota since May 5, 1978. He has been engaged in a general practice and, for the past several years, practiced from Lindstrom and Forest Lake, Minnesota. He has been associated with various lawyers, both in partnership arrangements and in employer-employee arrangements.

The first three counts of the director's petition alleged that Getty violated professional standards by his behavior in the trial of a case in Pine County in January 1984. Getty's client was suing in connection with the construction of a motel the plaintiff opened in Sturgeon Lake, Minnesota. Getty's client brought suit against the contractor for negligently breaching his construction contract and against the Bank of Barnum and its officers for fraud, alleging their individual liability for the bank's wrongful acts.

With regard to Getty's conduct during the trial, the referee found by clear and convincing evidence that Getty had been late numerous times returning from recesses, that Getty scowled or grimaced at adverse rulings and threw pencils on the table, that he had turned to his clients and said "error" after adverse rulings, pointed his thumb at the bench while facing spectators, persisted unreasonably in arguing adverse rulings, moved for mistrial in the presence of the jury and distracted and annoyed other counsel, perhaps unintentionally, by his trips for water. The referee also found the lawsuit against one of the individual bank officers to be without merit.

On appeal, Getty challenges some of the above findings, in particular, that Getty was late more than twice, moved for mistrial "several" times, had inappropriate facial expressions or made untoward remarks to his client while court was in session. Getty also challenges the finding that he brought a frivolous claim.

The fourth count against Getty alleges misconduct in a motion hearing before the Ramsey County District Court on April 10, 1985, in the judge's chambers. After hearing argument on both sides, the court indicated that a ruling would go against Getty's client. The referee found that Getty stated, "I knew how you were going to decide this case before I came to court." and that, after further heated discussion, Getty told the judge that "you know you're wrong, you're shaking too much." The judge told Getty to get out of his chambers and closed the door. Getty pounded on the door and said "you know you're wrong." Getty then returned to his clients in the courtroom and, while there, challenged a bailiff's authority to evict him. Getty again returned to the judge's chambers. He told the judge at this time that Getty's clients would remember this affair when they voted. Getty does not specifically challenge these particular findings, but does argue that the referee's account is incomplete and misleading.

The director's fifth count is that Getty's contacts with the relatives of a client Getty was representing in a criminal matter were improper. The referee found that, in phone conversations with these relatives, Getty had overemphasized the seriousness of criminal charges against his client and

criticized the relatives' lack of concern in an attempt to seek bail money and a retainer fee. One contact was with the 15-year-old sister of his client. It appears that Getty was unaware that his client had been arrested many times in the past and that his grandparents had made numerous previous attempts to assist their grandson. At the disciplinary hearing, Getty apologized to those relatives. On appeal, Getty challenges the referee's findings that Getty said that the public defender would be useless or that the relatives were uncaring.

The sixth count concerns Getty's representation of a client in Hennepin County in proceedings supplementary to the client's divorce. After a referee's order, the attorney for the client's former husband filed a motion for review of the order on June 27, 1985, setting the hearing for 9:00 a.m. on August 7, 1985. Getty prepared a countermotion, which was filed July 24, 1985, and another countermotion and an order to show cause for not holding the husband in contempt, both filed August 2, 1985. All of Getty's motions were noticed to be heard at the August 7 hearing. On that date, a previous hearing ran late and the hearing in Getty's matter did not begin until 9:45 a.m. The judge had the opposing motions before her, but not the order to show cause, though it was later found in the court's file. The judge asked the opposing attorney to proceed, but he was interrupted by Getty's request that the order to show cause be heard. In the discussion that ensued, Getty repeatedly interrupted the court. The referee found that Getty should have known that his desire to argue the order to show cause was out of order and that his interruptions were discourteous and an attempt to usurp the court's control of its hearing. On appeal, Getty challenges these findings.

The seventh and eighth counts of the director's petition allege irregularities in Getty's organization and use of his trust accounts. The referee found that Getty's business and trust account journals failed to record trial balances or monthly reconciliations of the trust account. Moreover, Getty had not properly instructed his book-keeper or reviewed the trust account records to ensure they were properly kept. The referee also found that Getty had written checks on trust accounts prior to receiving funds from the clients. These checks were written to meet filing deadlines and were sent on representations by the client that funds were forthcoming. Getty did deposit additional amounts to the trust funds to cover shortfalls. Finally, Getty's trust account at the Security State Bank of Lindstrom earned interest from July 1, 1983, which was not paid to the Lawyers' Trust Account Board. Getty agreed to determine the required interest and pay the sum to the board. On appeal, Getty challenges only the findings that he did not properly instruct his bookkeeper or review his trust account records.

After making his findings, the referee recommended that Getty be reprimanded, that he pay appropriate costs and that Getty be suspended from practice for 60 days. Respondent asks us to dismiss the petition outright whereas the director urges that, at a minimum, we adopt the referee's recommendations as to discipline in toto. We do, in fact, adopt all the referee's findings and his recommendations for discipline with the exception of the 60-day suspension.

We give great weight to the referee's findings and conclusions in disciplinary proceedings. *See In re Weyhrich*, 339 N.W.2d 274, 275 (Minn.1983). After a review of the record, we find adequate evidence to support the referee's findings. The factual disputes that exist largely center on the number of times Getty was tardy at trial and the nature or frequency of his interruptions and do not materially affect this court's judgment. It is the opinion of the court that the only real issue before us is the appropriate discipline to be applied in this case.

Ordinarily, we place great weight on a referee's recommendations, but final responsibility for discipline lies with this court. *In re Fling*, 316 N.W.2d 556, 559 (Minn.1982). In this matter, there are cir-

cumstances mitigating against suspending respondent. Conduct of the type demonstrated by respondent would not be tolerated if displayed by a veteran attorney with many years of experience and, in such a case, would mandate some form of suspension. Respondent, however, has only been in practice for a relatively short time. More importantly, the purpose of attorney discipline is not simply to punish, but to protect the public from misconduct of lawyers. We do not feel that it is necessary to suspend the respondent in order to fulfill that purpose, believing that a reprimand will suffice to make respondent more aware of his obligations. Respondent has made numerous apologies since proceedings have been brought and appears to realize the error of his ways and has the will to correct them. Respondent admittedly has an excitable personality and he wraps himself up emotionally with his clients' causes; however, he has not embezzled any funds from clients or intentionally caused them any harm nor is there any evidence of alcohol or drug abuse. The record here is vivid with evidence of one who simply must learn to control his emotions while in a courtroom. We notice also that, in all three of the instances filed by the director, none of the three trial judges found it necessary to use the contempt procedure to restrain the respondent.

We are not oblivious to the facts of this case. Respondent was rude, loud and disrespectful to the court on, at least, three occasions. He must learn to show more restraint and more respect for the judicial system even while disagreeing strongly with it or its decisions. Lawyers must be encouraged to represent their clients vigorously and we are hesitant in anyway to interfere with an attorney's ability to do so; yet, there is a line that should not be crossed and respondent has crossed it. Respondent must learn to be polite, but firm in his objections, to make any objections on the record to protect the same and to appeal any adverse rulings with which he disagrees. However, while we feel discipline of the respondent is mandated, we decline to put him out of business for 60 days, which could be tantamount to destroying his practice. Instead, we choose to issue him this strong reprimand and warning and grant him the opportunity to correct his conduct. We feel compelled to point out that respondent's conduct as exhibited in the past will not be tolerated in the future.

Accordingly, this court imposes the following discipline on respondent:

1. Respondent is publicly reprimanded for his behavior.

2. Costs of $500 are imposed against respondent. He shall pay said sum to the Board of Professional Responsibility within 60 days of the release of this opinion.