In re Petition for DISCIPLINARY ACTION AGAINST Douglas A. RUHLAND, an Attorney at Law of the State of Minnesota.

No. C4-88-1914.

Supreme Court of Minnesota.

July 7, 1989.

784

William J. Wernz, Director of the Office of Lawyers' Professional Responsibility, Wendy Willson Legge, Ass't Director, Saint Paul, for appellant.

John M. Martin, Saint Paul, for respondent.

PER CURIAM.

This case arises from a disciplinary complaint brought against respondent, Douglas A. Ruhland, alleging, among other misconduct, that he failed to pay funds to an opposing party as directed by a court order. Following the filing of a disciplinary petition by the director of the Office of Lawyers Professional Responsibility, a hearing was held on January 4–5, 1989, before a court-appointed referee. The referee issued findings of fact and conclusions of law and found that respondent's conduct had violated Rules 8.4(c) and (d) of the Minnesota Rules of Professional Conduct and recommended that respondent be publicly reprimanded and be assessed costs pursuant to Rule 24(a) and 24(b) of the Rules on Lawyers Professional Responsibility. We concur in the referee's findings and impose discipline.

In this matter, the referee's findings of fact are not conclusive because respondent ordered a transcript pursuant to Rule 14(e) of the Rules on Lawyers Professional Responsibility. The parties have, however, stipulated to most of the underlying facts and only two material factual events are in dispute.

The respondent, Douglas A. Ruhland, was admitted to practice law in Minnesota on May 5, 1978, and currently practices in Eden Valley, Minnesota.

In the spring of 1984, Loren Larson retained respondent to represent him in a post-dissolution dispute over child support payments with his former spouse, Laurel Larson. In August of 1984, Wright County District Court Judge Kim Johnson ordered that the amount of child support Larson paid to his ex-wife be increased from $150 to $430 per month. Mr. Larson appealed this order to the Minnesota Court of Appeals.

On January 7, 1985, during the pendency of this appeal, Ms. Larson moved to find Mr. Larson in constructive civil contempt for failure to pay the increased amount of child support. Judge Johnson found Mr. Larson in contempt, but allowed him to stay contempt proceedings by posting a supersedeas bond of $3,640, the amount of arrearage in child support.

The court of appeals subsequently reversed the increase in child support and remanded to the trial court for further evidentiary findings concerning Mr. Larson's income. Following an evidentiary hearing, Judge Johnson issued an order dated June 27, 1986, which established child support at $390 per month, retroactive to August 15, 1984, and provided that Mr. Larson's cash deposit of $3,640 plus interest be returned to him despite the fact that arrearages still existed in child support. On June 30, the Wright County Court administrator mailed a check for $3,996.26 to respondent payable to Loren Larson.

Laurel Larson's attorney, Doris McKinnis, believed that the return of the cash deposit to Mr. Larson was in error and arranged a telephone conference call with respondent and Judge Johnson to discuss the matter.

The parties dispute what occurred during this conference call. The director alleges, the referee found, and both Judge Johnson and McKinnis testified that, during the July 1 conference call, Judge Johnson asked respondent to hold the check which had been sent to Mr. Larson and that respondent expressed reluctance at doing so, but finally agreed. Following this conference call, both Judge Johnson and McKinnis understood that respondent would retain the check pending a decision on a motion made by McKinnis to amend the June 27 order.

Contrarily, respondent maintains that, at no time during the July 1 conference call, did he agree to hold the check pending a decision on McMinnis's motion. Instead, respondent contends that he told Judge Johnson and McKinnis that he would have to consult with his client before agreeing to anything.

On July 1, shortly after this conference call, respondent imposed an attorney's lien on the check issued to his client. Later that evening, after discussing the matter with Mr. Larson and obtaining his endorsement, respondent deposited the check in his trust account.

On July 28, 1986, a hearing was held before Judge Johnson to hear formal motions from both respondent and McKinnis to amend the June 27 order. At this hearing, respondent informed the court that he had placed the check in his trust account and imposed an attorney's lien against these funds.

Respondent contends that, at the conclusion of the July 28 hearing, Judge Johnson stated that he was not inclined to amend his June 27 order. The director alleges, and the referee found, however, that Judge Johnson gave no indication as to how he would rule and said only that he would take the matter under advisement. In addition, Judge Johnson testified that, in his own mind, he had decided that the return of the money to Mr. Larson had been a mistake.[1]

On July 28, immediately after the hearing, respondent returned to his office where he wrote a check for $3,995.36 on his trust account payable to his business account in satisfaction of his attorney's lien. After this transaction, only $.90 remained on deposit in the trust account.

On July 29, 1986, McKinnis informed respondent that Judge Johnson was signing an order requiring that the funds be turned over to her client. McKinnis demanded that respondent send her the money immediately, but respondent declined, saying he would not send the money without a writ-

ten order. He did not inform McKinnis that he had transferred all but $.90 of the funds to his business account in satisfaction of his attorney's lien. Judge Johnson issued an order on August 12, 1986, directing respondent and his attorney to pay Ms. Larson "the $3,640 currently being held in Mr. Ruhland's trust account."

On September 3, 1986, McKinnis brought an action to find Mr. Larson in contempt for failing to pay retroactive child support pursuant to the June 27 order. This motion was set for hearing on September 9, 1986. Prior to this motion, McKinnis attempted to call respondent approximately five times and, in a letter dated August 26, 1986, sent him a certified copy of the court's August 12 order.

On September 8, 1986, respondent mailed a trust account check in the amount of $.90 to McKinnis. On September 9, prior to the hearing, McKinnis asked respondent about the money and respondent told her that he had issued and mailed a check to her the previous day. Respondent did not inform McKinnis at that time that the check was for $.90. It was only during the September 9 hearing in regard to the motion for contempt against Mr. Larson that respondent informed McKinnis and the court that he had satisfied his attorney's lien with the funds from the check in his trust account and that only $.90 remained.

Though not material to these proceedings, the court of appeals ultimately ruled in favor of Mr. Larson and further held that the contempt judgments against respondent and Mr. Larson be dismissed as moot.

The standard of proof in attorney disciplinary proceedings is "full, clear and convincing evidence." *See In re Gillard,* 271 N.W.2d 785, 805 n. 3 (Minn.1978). On review by this court, the referee's findings of fact will not be set aside unless clearly erroneous. *In re Pyles,* 421 N.W.2d 321, 325 (1988).

---

1. We note with some concern that there is no transcript available to attest fully to what occurred during the July 1 conference call or July 28 hearing, nor are there any trial court notes or minutes of these proceedings available.

The referee found that respondent's testimony as to what occurred on July 1 and July 28 was not credible. If respondent's testimony had been pitted against only that of opposing counsel, it would have been very difficult to find that the referee's findings were based on the "full, clear and convincing evidence." Here, however, the trial court judge has substantiated McKinnis as to what transpired during the July 1 conference call and at the July 28 hearing. While it is true that the judge's recollection of these events is not entirely clear, he stated unequivocally that he did not indicate how he was going to rule on the parties' motions and that respondent agreed to hold the check until after the matter had been resolved. When disputed fact questions exist, we afford great weight to the referee's findings. *In re Simmonds*, 415 N.W.2d 673, 676 (Minn. 1987). This is especially true when the dispute is presented by conflicting testimony. *See In re Daffer*, 344 N.W.2d 382, 386 (Minn.1984) (the referee had the opportunity to observe respondent and evaluate the evidence, and the court accepted his evaluation of respondent's character). The referee's choice to disbelieve respondent's testimony is supported by full, clear and convincing evidence and no basis exists for deeming it clearly erroneous.

The question remains whether respondent's conduct in failing to (a) abide by his agreement with the court and opposing counsel, (b) disclose his exercise of his attorney's lien, and (c) obey the trial court's order to surrender the money violated the Minnesota Rules of Professional Conduct.

Attorneys are, first of all, officers of the court and owe it their highest duty. *See In re Lord*, 255 Minn. 370, 375, 97 N.W.2d 287, 291 (1959). This duty imposes an obligation on all attorneys to be truthful in their dealings with both opposing counsel and the court. Furthermore, if courts cannot trust attorneys to honor agreements and obey their orders, then the administration of justice becomes greatly impaired and the courts' ability to function is threatened.

The conduct of respondent here cannot be condoned. Therefore, we concur in the referee's findings that respondent's conduct violated both Rules 8.4(c) and (d) of the Minnesota Rules of Professional Conduct.

Respondent is publicly reprimanded and shall pay $750 in costs pursuant to Rule 24(a) plus disbursements pursuant to Rule 24(b) of the Rules of Lawyers Professional Responsibility.