**In re Petition for DISCIPLINARY ACTION AGAINST Paris DonRay GETTY, an Attorney at Law of the State of Minnesota.**

No. C8–85–2372.

Supreme Court of Minnesota.

March 16, 1990.

Getty Law Offices, Paris DonRay Getty, Minneapolis, pro se.

William J. Wernz, Director of Lawyers Professional Responsibility Bd., Candice Hojan, Sr. Asst. Director, St. Paul, for petitioner.

PER CURIAM.

Respondent Paris DonRay Getty, admitted to the practice of law in May, 1978, is before this court for a second time. In 1987, he was publicly reprimanded (for rude, loud and disrespectful conduct during various court proceedings, and for poor accounting and trust fund practices) and given an opportunity to correct his conduct. *In re Getty*, 401 N.W.2d 668 (Minn.1987). Now respondent is before the court again charged with additional misconduct, including failure to keep a client advised of the status of his case (Rule 1.4, Minnesota Rules of Professional Conduct (MRPC)), settling a case without the client's authority (Rule 1.2), failure to promptly refund the trust account balance to the client upon withdrawing as attorney (Rule 1.16(d)), failure to keep adequate trust account or office account books and records (Rule 1.15(a), 1.15(b)(3), 1.15(g)), and failure to promptly refund the unearned portion of a retainer fee (Rule 1.15(b)(4)). We order a sixty day suspension with a two year supervised probation following suspension.

The present action, filed on November 11, 1988, by the Director of the Office of Lawyers Professional Responsibility, charged respondent with four counts of misconduct. A referee was appointed and conducted a hearing on April 26 and 27, 1989. The referee found three of the four allegations in the disciplinary petition to be violations of the Minnesota Rules of Professional Conduct. Of these three violations, only two are properly before the

court,[1] Count I and Count III. The referee recommended that respondent's license to practice law be suspended for 45 days and that it be reinstated on condition that his law office practices and procedures, including books and records, be supervised for a period of two years by a lawyer appointed by the Director's office. Respondent ordered a transcript of the hearing, therefore the referee's findings are not conclusive. Rules on Lawyers Professional Responsibility (RLPR), Rule 14(e).

■ *Count I.* Respondent represented Kenneth McKellar on a counterclaim for defective feed. For a period of over four months respondent failed to respond to discovery requests sent to him by opposing counsel. Respondent failed to send any of the requests to his client. He also failed to appear at a hearing to compel production. The documentary evidence showed that 30 days after an order to compel was signed by the trial court, respondent informed his client about the order. In addition, just after the order was filed, respondent settled McKellar's case without McKellar's authorization and against his wishes. In July 1988, respondent unilaterally withdrew from representing McKellar but did not return McKellar's unused trust fund until September 2, 1988, after McKellar filed a complaint with the Director's office.

The referee concluded that respondent had settled McKellar's case without permission in violation of Rule 1.2; failed to forward discovery requests to McKellar and failed to notify him of a hearing in violation of Rule 1.4; failed to withdraw promptly from representation and to promptly return McKellar's unused trust fund balance in violation of Rule 1.16(d).

*Count III.* Respondent represented Janet Kern for excess liability as a third party defendant in a dram shop action. He also investigated the propriety of filing a section 1983 action on behalf of Kern and her son. He had previously represented Kern's son in 1985 in a juvenile matter on an expenses-only basis. Respondent agreed to represent Kern in both the dram shop and section 1983 matters for a flat fee of $10,000 which Kern paid. Respondent did little work on either case, and approximately 4 or 5 months after he was hired, Kern terminated the representation. She asked for an accounting and a refund of the unused portion of her $10,000.00 retainer. Respondent told her he would return $7,500. After repeated requests by Kern for a refund, respondent wrote Kern a check for $2,500, which was returned for insufficient funds. A few days after the bad check was written, Kern filed a complaint with the Director's office. Respondent then sent her a wire transfer for $2,500. Kern was eventually awarded the remaining $5,000 after a fee arbitration. She never received more than an estimated accounting.

The referee concluded that respondent failed to determine the unearned portion of the retainer received from Kern and failed to put that portion into an interest bearing trust account in violation of Rule 1.15(a); failed to maintain complete records of all incoming funds and provide an accounting of those funds to Kern in violation of Rule 1.15(b)(3); failed to promptly refund the unused retainer in violation of Rule 1.15(b)(4); and failed to maintain books and records sufficient to show income and expenses in violation of Rule 1.15(g).

Respondent disputes most of the referee's conclusions and the factual findings underlying them. "The standard of proof in attorney discipline proceedings is 'full, clear and convincing evidence.'" *In re Ruhland,* 442 N.W.2d 783, 785 (Minn.1989) (quoting *In re Gillard,* 271 N.W.2d 785, 805 n. 3 (Minn.1978)). When there are disputed facts in a disciplinary action, the referee's findings are given "great weight." *Id.* at 786. "[T]he referee's findings of fact will not be set aside unless clearly erroneous." *Id.* at 785.

With regard to the McKellar matter, respondent challenges the facts underlying

---

1. The referee found an additional rule violation in Count I with which respondent had not been charged. He also found an additional violation of a rule in Count III, with which respondent had not been charged. The Director's office agrees with respondent that these two violations should not be addressed by the court because they were not charged in the petition.

the referee's conclusions, and alternatively argues that the referee did not give sufficient weight to respondent's testimony; that the referee erred in excluding evidence that respondent's associate deliberately sabotaged his business; that the various instances of alleged misconduct are in fact not misconduct, and that even if the misconduct is true, discipline is not warranted.

Many of respondent's challenges to the referee's findings and conclusions are based upon the fact that the referee chose not to believe respondent's testimony. Respondent challenges the facts underlying the conclusion that respondent settled McKellar's claim without authority. Respondent contends that the referee disregarded the testimony of himself, his associate, and his secretary, that McKellar told them that he wanted his case settled. Respondent also challenges the facts underlying the conclusion that he did not transmit the discovery requests to McKellar or notify him of the order compelling production. Respondent argues that at the hearing he testified that he had given the interrogatories to McKellar. The referee obviously disbelieved respondent's testimony concerning these two incidents. When reviewing factual disputes, great weight is given to the referee's findings, "especially * * * when the dispute is presented by conflicting testimony." *In re Ruhland*, 442 N.W.2d at 786.

Additionally, there was other evidence to substantiate the referee's findings. McKellar's testimony that he never authorized respondent to settle his case is substantiated by his letter to respondent telling him not to settle the case.[2] With respect to the referee's conclusion that respondent failed to forward the discovery requests and order compelling discovery, or to notify McKellar of the hearing, McKellar testified that he never received any of the documents. Moreover, respondent did not have any transmittal letters to McKellar concerning the discovery requests. In sum, our review of the record indicates

that the evidence upon which the referee based his findings of unauthorized settlement and failure to communicate was clear and convincing. There is no merit to respondent's contention that the referee's findings were erroneous.

Respondent also argues that the referee disregarded testimony that one of respondent's associates deliberately sabotaged his business. Respondent attempted to introduce testimony at the hearing which he argues would have shown that his associate was responsible for transmittal documents and that she deliberately did not send them to McKellar. We find respondent's attempt to shift the blame for his own failures to another member of his office less than impressive. The referee properly excluded the testimony. The only evidence respondent introduced to show mitigating circumstances was his own testimony. The referee was free to disregard that testimony if he found it was not credible.

With respect to the referee's conclusion that respondent did not promptly refund McKellar's unused trust funds, respondent admits that he did not return McKellar's unused monies until September 2, 1988, 30 days after respondent unilaterally withdrew from representing McKellar. Respondent maintains, however, that this was a reasonable period of time. Rule 1.16(d), MRPC, provides that an attorney shall "take steps to the extent reasonably practicable to * * * refund[ ] any advance payment of fee that has not been earned." Respondent argues that the rules say funds must be returned "promptly", not immediately. At the hearing respondent explained his failure to return the money to McKellar by testifying that McKellar said he would pick up his file and the money at the same time. Respondent had no documentation or other testimony to support this argument. While respondent refunded McKellar's money within 30 days after sending him the notice of withdrawal pa-

---

2. On May 4, 1988 respondent sent McKellar a letter from opposing counsel regarding the settlement agreement. McKellar responded to the letter from respondent by sending a letter to

him which stated, "I have not agreed to the amount of $3,500.00 on my claim. I would appreciate it if you would continue with this until it is agreeable with what I have in mind."

pers, he did not refund that money until after McKellar filed a complaint with the Director's office. Based upon the circumstances of this case, it was not clearly erroneous for the referee to conclude that respondent could have returned McKellar's monies in a more reasonable period of time.

The gist of the referee's findings and conclusions with regard to the Kern matter is that respondent completely failed to maintain any books and records so that respondent could document the amount of money received from Kern, how much work he did on her behalf, and the amount of money to be refunded to her. At the hearing, respondent was essentially unable to produce any evidence that he earned the right to Kern's $10,000.00 retainer either before or after she paid it to him. Respondent did not have time records concerning the representation or books showing expenditures on her behalf. He also was unable to produce evidence of incoming funds from Kern. Respondent's receipts to Kern were written on odd pieces of paper including an envelope and a cocktail napkin. Respondent admitted that he did not place the $10,000.00 in trust when a dispute arose concerning the funds. Moreover, Kern did not receive a refund on her retainer until over three months after she terminated the representation. When she finally did receive a check from respondent, it was returned for insufficient funds. Only after Kern filed a complaint with the Director's office did she receive a wire transfer for $2,500.00. Kern did not receive the remaining $5,000.00 until one year after she terminated the representation, and even then the refund was pursuant to the arbitration.

Our review of the record illustrates that there was clear and convincing evidence in the record to sustain the referee's conclusion that respondent violated the rules requiring attorneys to account for income and expenditures and to maintain sufficient books and records concerning the representation of a client.

■ The remaining issue concerns the discipline warranted in light of respondent's misconduct. The referee recommended a 45 day suspension and a two year probation of respondent's accounting practices and procedures. While we give great weight to the referee's recommendation, this court alone makes the ultimate determination of the appropriate discipline. *In re Pyles*, 421 N.W.2d 321, 325 (Minn. 1988); *In re Getty*, 401 N.W.2d at 670.

■ The purpose of disciplinary proceedings is to protect the public from harm and deter future misconduct, not to punish the attorney. *In re McCoy*, 447 N.W.2d 887, 890 (Minn.1989) (*McCoy III*); *In re Heffernan*, 351 N.W.2d 13, 15 (Minn.1984). Appropriate sanctions are determined by weighing the type of misconduct, the "cumulative weight of the disciplinary rule violations, and the potential harm to the public, to the legal profession, and to the administration of justice." *Pyles*, 421 N.W.2d at 325.

■ When an attorney is before this court for a second time on a disciplinary charge, it is the general rule that the discipline to be imposed must be reviewed in light of the earlier misconduct. *See, e.g., In re McCoy*, 375 N.W.2d 471 (1985) (*McCoy I*), 422 N.W.2d 731, 733–34 (Minn. 1988) (*McCoy II*), 447 N.W.2d at 891 *(McCoy III), (McCoy II*, pattern of repeated misconduct justifies indefinite suspension; *McCoy III*, disbarment); *In re Haugen*, 425 N.W.2d 835, 837 (Minn.1988) (*Haugen II*) (cumulative effect of new violations in view of earlier disciplinary action warrants indefinite suspension).

We have held in the past that suspension followed by probation or disbarment is an appropriate sanction for situations where the misconduct in the second proceeding is a repeat of the earlier misconduct. For example, in *In re Shaw*, 396 N.W.2d 573, 576 (Minn.1986), the attorney was indefinitely suspended after his third disciplinary proceeding before this court. In all three proceedings, the attorney was disciplined, at least in part, for improper office accounting procedures. In his third disciplinary proceeding, because he failed to show "renewed commitment" to professional behavior, we ordered indefinite suspension from the practice of law. *Id.* at 576. *See also In re Simonson*, 420 N.W.2d 903 (Minn.1988) (attorney was first disciplined for misappropriation of client funds, later disbarred for more misappropriations, fail-

ure to pay taxes and improper maintenance of books and records).

■ Respondent is charged for the second time with improper conduct with respect to trust funds and accounting practices. In 1987, respondent was publicly reprimanded by this court for rude, loud and disrespectful conduct during various court proceedings; failure to properly record trust balances; failure to properly keep trust account journals; writing checks prior to receiving the funds from clients; and unpaid interest on the trust account not paid over to the Lawyers' Trust Account Board. *Getty,* 401 N.W.2d at 670–71. The referee had recommended 60 days suspension. We chose instead to reprimand respondent, believing at that time that a reprimand would suffice "to make respondent more aware of his obligations." *Id.* at 671. We were hesitant to interfere with a lawyer's ability to represent a client vigorously. We noted that respondent had an excitable personality, and that he was not facing allegations of serious misconduct, but we gave clear notice that such conduct would not be tolerated in the future. *Id.* at 671.

A review of respondent's current accounting improprieties indicates to us that the public reprimand issued to respondent in 1987 was insufficient to remind him of his duties with respect to his office accounting procedures. *See, e.g., In re Shaw,* 396 N.W.2d 573 (Minn.1986). As argued by the Director, and noted by the referee, "Mr. Getty admits his financial records were 'sloppy' but has otherwise failed to acknowledge ethical violations."

Respondent's accounting practices, standing alone, constitute serious misconduct which warrant discipline, but the sanction to be imposed must also be examined in light of the fact that respondent is further charged with two counts of failing to properly represent his client. The referee found by clear and convincing evidence that respondent improperly settled the McKellar suit and that he failed to communicate with McKellar about his legal action. Unauthorized settlements and failure to communicate are also serious disciplinary violations. *In re Haugen,* 373 N.W.2d 600, 600–01 (Minn.1985) (*Haugen I*) (failure to

comply with discovery orders and appear for hearing warrants public reprimand and two years supervised probation).

The cumulative effect of respondent's disciplinary rule violations is considerable. Respondent has not exhibited the renewed commitment to professional conduct expected of a previously disciplined attorney. While he has admitted that his accounting practices were imperfect, he has apparently not recognized that accounting violations are ethical improprieties. Respondent has presented no credible mitigating factors for his misconduct but instead has made repeated attempts to blame everyone but himself for his troubles.

It is the order of this court that the license of Paris DonRay Getty to practice law in the state of Minnesota be suspended for a period of sixty days and that it be reinstated on condition that his law office practices and procedures, including books and records, be supervised for a period of two years by a lawyer appointed by the Director's office. Costs of $750 are imposed on respondent.

So ordered.