**In re Petition for DISCIPLINARY ACTION AGAINST Paris DonRay GETTY, an Attorney at Law of the State of Minnesota.**

No. C8-85-2372.

Supreme Court of Minnesota.

June 24, 1994.

Marcia A. Johnson, Director, Lawyers Professional Responsibility Bd., Timothy M. Burke, Martin A. Cole, Asst. Directors, St. Paul, for appellant.

Douglas W. Thomson, St. Paul, for respondent.

OPINION

PER CURIAM.

Following a 2-day hearing, Judge Bruce W. Christopherson, referee, found that respondent Paris DonRay Getty had committed multiple acts of professional misconduct. Respondent has a history of misconduct; this court has disciplined him twice. The referee recommended disbarment or, in the alternative, indefinite suspension. Because respondent ordered a transcript, the referee's findings and conclusions are subject to review. Respondent's misconduct, as found by the referee, includes the following:

*Trout Matter*

Russell Trout paid respondent $2,200 to represent him in a property dispute in Wisconsin, where respondent is not licensed to practice. In November 1990, opposing counsel took Trout's deposition, but objected to respondent's appearing without being accompanied by a Wisconsin attorney. Respondent stated that he was associated with Wisconsin counsel, but the referee found this was not true.

Later, opposing counsel noticed a motion for summary judgment to be heard on February 1, 1991. By this time respondent had retained local Wisconsin counsel. Respondent told local counsel he would be at the hearing; instead, respondent did not appear, nor did he file any papers in response to the motion. The trial court took the motion under advisement but indicated he would rule against Trout on the primary issue. Trout was not advised of these events.

Respondent caused to be filed a third party claim, which was dismissed by the trial court as untimely filed. (Wisconsin law allows filing of a third party complaint without leave of the court only during the first 6 months following commencement of the action.) Respondent then noticed a motion for leave to file the third party claim, setting the hearing date unilaterally without informing the court or clearing it with the scheduling clerk. Then, "to top it off," as the Wisconsin judge put it, respondent did not show up for the hearing except by telephone. The court sanctioned respondent $350 and granted the opposing party summary judgment. Not until May 1991 did respondent advise his client of these developments. Respondent promised to refund $1,600 of the retainer, but he never did. In conciliation court, the client was awarded $2,216; on respondent's appeal to district court, the district court awarded the client $4,616. None of this has been paid.

## Petrich Civil Matter

Richard Petrich hired respondent for some legal work, including the defense in a bankruptcy estate's suit against Petrich. Respondent was late in leaving for the court hearing in Duluth and consequently arrived late for the hearing, by which time the judge had ordered a default judgment against respondent's client. To vacate the default judgment, respondent had to pay the bankruptcy trustee $250. Although respondent agreed to file an answer within 10 days, it took him 19 days. Respondent did not tell Petrich that responses to interrogatories needed to be prepared and did not keep his client informed of other developments in the case. When answers to interrogatories were not served and filed, the court ordered judgment

by default against Petrich for $12,624 plus attorney fees of $750. The client found out he had lost the case when respondent gave him his file. Respondent never provided the client with a bill or an accounting or any refund of the fee payment of $6,500.

## Petrich Criminal Matter

In the spring of 1991, Petrich also hired respondent to represent him in a criminal matter. In January 1992, the jury returned a verdict of guilty. Respondent told Petrich he need $10,000 for the appeal, and had Petrich sign a fee agreement. Petrich's father paid the fee. In April 1992, before respondent had filed a brief, Petrich discharged respondent, and successfully appealed his conviction with new counsel. Despite requests from Petrich and his father, respondent did not refund any money, send a bill, or provide an accounting for whatever work he might have done.

## Richards Matter

Martha Richards hired respondent to pursue a medical malpractice claim. She signed a contingency fee agreement, agreeing to pay respondent $350 an hour up to a total of $20,000, this fee to be credited against respondent's 25-percent contingent fee. The agreement provided that the $20,000 was "immediately earned at the time of payment * * * that the payment will be made as soon as possible * * * [and that this payment] NEED NOT BE PLACED IN THE TRUST ACCOUNT FOR FUTURE SERVICES PAYMENT." Richards paid the $20,000, part of which she raised by a mortgage loan on her home.

In August 1991, respondent served a complaint on Richards' behalf. The defendants served a demand for expert review, requesting that respondent produce an affidavit as required by law. In October, the defendants served an answer and discovery requests, including interrogatories. Richards prepared handwritten answers to the interrogatories and gave them to respondent, but respondent never answered the interrogatories. In March, respondent submitted an affidavit from a doctor that was late and legally insufficient. In May 1992, the defendants served a motion for summary judgment. Respondent did not file any papers in opposition to

the defendants' motion; instead, in June, he wrote defendants that "[m]y client has decided to dismiss her claim on condition that there is no claim for costs or attorney's fees." Six days later respondent executed a stipulation for dismissal with prejudice of Richards' claim. The referee found that Richards never authorized respondent to dismiss the case. Richards was told by respondent that her case was over because a doctor could not be found to testify. Again, the client was never given a bill, an accounting, or any refund. There was expert testimony that respondent's $350 an hour fee was unreasonable; that there was no basis to go forward with a malpractice claim; and that the respondent had done "no work at all in pursuing the claim" during the 6 months the case was in suit.

### G.L.E. Matter

Respondent is the father of a child whose mother is G.L.E. On April 12, 1991, respondent opened the passenger door of G.L.E.'s car and tried to take the baby. He refused to close the door unless G.L.E. talked to him. He screamed at G.L.E. and threatened to kill himself unless she called him. He followed her as she drove to work, driving dangerously close to her and cutting in front of other cars, all the while yelling and crying. On May 29, 1991, the Ramsey County District Court issued an order of protection which forbade respondent from any contact with G.L.E. or her child, prohibited respondent from entering her residence or place of employment, and prohibited respondent from doing anything to harm or cause fear of harm to G.L.E. or her child. Respondent appealed the order, and the court of appeals affirmed in an unpublished opinion.

On June 10, 1991, respondent drove his car at G.L.E. in the parking lot of her place of employment. As a result of this incident and another, respondent was charged with one count of reckless driving and two counts of violating the order for protection. He entered an *Alford* plea under which one charge of violating the order was amended to a charge of disorderly conduct, the other charges were dropped, and he was sentenced to serve 2 days in the Ramsey County Correctional Facility.

### The Tax Matter

Respondent failed to timely file Minnesota and Federal income tax returns for tax years 1990 and 1991. He did not file any of these returns until June 1993.

### Prior Disciplinary History

The referee found that respondent's disciplinary history substantially aggravated his current misconduct. Respondent was previously disciplined by this court in 1987 and again in 1990. In *In re Getty*, 401 N.W.2d 668 (Minn.1987), respondent was publicly reprimanded for rude, loud and disrespectful conduct during court proceedings and for poor accounting and trust fund practices. In *In re Getty*, 452 N.W.2d 694 (Minn.1990), respondent was suspended for 60 days plus 2 years' supervised probation for, among other things, settling a case without the client's permission, failing to forward discovery requests or notify a client of a hearing, failing to withdraw promptly from representation and to return promptly the unused trust fund balance, failing to determine the unearned portion of a retainer and put that amount into an interest-bearing trust fund and provide an accounting of those funds to the client, and failing to maintain books and records sufficient to show income and expenses.

In 1991, pursuant to stipulation, we extended respondent's probation to December 31, 1993, because of his failure to appear in court and communicate with a client, issuance of an NSF check to the Board of Continuing Legal Education in payment of a late fee, practicing law after his license was suspended for nonpayment of the attorney registration fee, and for other misconduct. In addition, the Director has issued respondent three private admonitions, in 1989, 1991 and 1993, for, among other things, failure to communicate with clients, neglect of clients, retaliation against a person who filed a complaint, failure to arrive on time at court, failure to prepare a client to testify at trial, and failure to submit proposed findings after a trial.

The referee's findings are amply supported by the evidence. *See In re Ruhland*, 442 N.W.2d 783, 786 (Minn.1989).

Respondent claims that his misconduct occurred either while he was suffering from active chemical dependency, or, later, when he was recovering from the aftereffects of chemical dependency. The referee found that respondent has been addicted to marijuana since his college days and to cocaine since 1985; that he underwent outpatient chemical dependency treatment in 1977–78 and relapse treatment in 1988–89; that he ceased use of cocaine in February 1991 and ceased use of marijuana in May 1991; and that he attended a cocaine abuse program in 1991 and currently attends weekly AA meetings.

Respondent argues that cocaine dependency should be considered a mitigating factor like alcoholism. "For alcoholism to be a mitigating factor, the attorney must prove by clear and convincing evidence (1) he is affected by alcoholism, (2) the alcoholism caused the misconduct, (3) he is recovering from alcoholism, (4) the recovery has arrested the misconduct, and (5) the misconduct is not apt to recur." *In re Anderley*, 481 N.W.2d 366, 370 (Minn.1992). Chemical dependency is not a defense to misconduct, *i.e.*, it does not excuse the misconduct, nor does it make the misconduct any less an affront to the administration of justice or any less harmful to the client; but the dependency, if it meets the *Anderley* test, may lighten the discipline.

Unlike alcohol, the use and possession of cocaine is itself illegal; arguably, even if the five-factor *Anderley* test were met, a cocaine dependency should not lighten the discipline, or at least should lighten the discipline to a lesser extent than alcohol dependency would. A successful recovery from a cocaine dependency, one might argue, might be considered at the time an attorney seeks reinstatement following completion of whatever discipline is imposed. In any event, we need not decide here whether cocaine dependency should, for mitigation purposes, be treated differently than for alcoholism. As the referee correctly found, even if the *Anderley* test were to be applied, respondent fails to meet the test. Here there was no evidence that the cocaine dependency or its aftereffects caused the misconduct. Finally, there is no merit to

respondent's claim that any delay in bringing the misconduct charges prejudiced respondent here.

This case requires disbarment. There are multiple violations of the following Rules of Professional Conduct: 1.1, 1.2(a), 1.3, 1.4, 1.15(b)(3), 1.16(d), 3.4(d), 5.5(a), 8.4(c) and (d). There is a persistent pattern of misconduct, which has caused grievous harm to clients and to the legal profession. Respondent's habit is to obtain a substantial retainer and neglect the file, to the understandable distress of the client, and then, when the representation is ended, to refuse to account for the unearned portion of the retainer, much less to refund any unearned portion. Respondent has shown a consistent disregard for court procedures, has failed to file tax returns timely, and, finally, has violated a court order issued for the protection of the mother of his child and the child. Instead of remorse, respondent has offered excuses, many of which were incredible, as the referee found, or otherwise were irrelevant. In *In re Gennow*, 206 Minn. 389, 289 N.W. 887 (1939), and *In re McCoy*, 447 N.W.2d 887 (Minn.1989), we ordered disbarment for misconduct in many respects similar to the misconduct here. Consequently, here, too, it is ordered,

That respondent is disbarred.

TOMLJANOVICH, J., took no part in the consideration or decision of this case.