**In re Petition for DISCIPLINARY ACTION AGAINST William N. BERNARD, an Attorney at Law of the State of Minnesota.**

No. C9–85–1621.

Supreme Court of Minnesota.

July 14, 1995.

Marcia A. Johnson, Director, Lawyers Professional Responsibility Bd., Martin A. Cole, Sr. Asst. Director, St. Paul, for appellant.

John P. Sheehy, Mesbesher & Spence, Ltd., Minneapolis, for respondent.

## OPINION

PER CURIAM.

This matter is before the court upon petition by the Director of the Office of Lawyers Professional Responsibility against respondent, William N. Bernard, asserting that respondent committed unprofessional conduct in altering a fully-executed deed and recording it. We hold that respondent's misconduct warrants temporary suspension from the practice of law.

The basic facts of this case are undisputed. Respondent was admitted to practice in Minnesota on June 3, 1964. He is currently a sole practitioner in Willmar, Minnesota.

In March 1993, T.G. was living in a house she leased from Jerome and Jane Vikse. The Vikses had previously redeemed the house for T.G. and her boyfriend for $25,700 and gave T.G. a three-month lease with an option to purchase the property. Apparently, the option was due to expire on March 2, 1993, and the Vikses were not willing to extend the time limit.

On March 1, 1993, T.G. met with respondent at his law office to seek his help in obtaining financial assistance to purchase the house before the March 2 deadline. According to respondent, T.G. was very upset and in a desperate condition. Although respondent initially declined to assist her, T.G. returned to his office later in the day and renewed her request. At that time, respondent agreed to assist T.G.

After attempting to reach several friends with whom he had previously invested, respondent told T.G. he would attempt to reach Tim ("T.K.") Roe, an old friend he had not contacted in five to ten years. Although he had never participated in any investments with Roe, respondent believed Roe might be willing to assist T.G.

On March 2, 1993, respondent met with the Vikses' attorney. Having discussed with respondent the possibility that Roe would provide the financing for the purchase, the Vikses' attorney prepared a deed transferring the property from the Vikses to Roe. On March 3, 1993, because he had not yet been able to reach Roe, respondent transferred $35,750 of his own money into his law firm trust account and then issued a check in the same amount from the trust account to the Vikses to pay the option price for the house. The option price was lower than the value at which the property had been appraised for tax purposes. On the same day, the Vikses executed the deed, and it was delivered a week later to respondent for recording.

Following the sale, respondent unsuccessfully attempted to contact Roe. By March 22, 1993, however, respondent learned that T.G. had an unfavorable credit history including unpaid bills and an outstanding lien. As

a result, respondent decided he would not seek financing from Roe and would instead continue to finance the purchase himself. On March 22, respondent attempted without success to contact the Vikses' attorney to inform him that respondent intended to change the deed to reflect that respondent, and not Roe, was the grantee. On the same day, respondent deleted the two references on the deed to "T.K. Roe" as the grantee, inserted his wife's name "C.H. Bernard" in the respective spaces, and recorded the deed in Kandiyohi County. According to respondent, he changed the name on the deed because he was pressed for time, and he used his wife's name for tax reasons.

Roughly three weeks later, Jane Vikse called respondent after receiving a tax bill for the property that was still in the Vikses' names. At respondent's suggestion, Vikse went to the courthouse to resolve the matter. While doing so, Vikse discovered that the name of the grantee on the deed had been changed, and she subsequently made a complaint to the county attorney.

In May 1993, T.G. obtained a bank mortgage and repaid respondent the amount he provided plus interest and miscellaneous other expenses. Respondent then transferred the property to T.G.

On September 12, 1994, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent asserting that respondent committed unprofessional conduct in altering an executed deed and recording it. On December 9, 1994, Honorable James D. Mason, acting as referee, conducted a hearing on the Director's petition. In addition to hearing respondent's testimony, the referee received exhibits relating to two prior disciplinary proceedings in which respondent was involved. First, by supreme court order dated October 9, 1985, respondent was publicly reprimanded and placed on two years probation for adding property to an executed, recorded mortgage deed and re-recording it in another

county. *See In re Bernard,* 374 N.W.2d 721 (Minn.1985). Second, on December 21, 1992, respondent was admonished for charging interest without prior agreement and for seeking to collect a fee from a nonclient.

On January 19, 1995, the referee issued findings of fact, conclusions of law, and recommendations. The referee determined that respondent's conduct in altering an executed deed and recording it violated Rules 8.4(c) and (d) of the Minnesota Rules of Professional Conduct[1] and that respondent's prior discipline for altering and re-recording a mortgage deed aggravated his current conduct. As a result, the referee recommended that respondent be indefinitely suspended from the practice of law and not be allowed to petition for reinstatement for a minimum period of three months. The referee also recommended that respondent be required to comply with all requirements of Rule 18 and Rule 26, Rules on Lawyers Professional Responsibility (RLPR). The Director accepts the referee's findings and conclusions and urges this court to adopt the referee's recommendations in full.

## I.

The sole issue before this court is whether the disciplinary sanction recommended by the referee is appropriate.

Generally, this court gives great weight to the recommendation of the referee, but it retains final responsibility to determine the appropriate sanction. *In re Ruffenach,* 486 N.W.2d 387, 390 (Minn.1992). In determining whether a particular disciplinary sanction is appropriate, the court weighs the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the harm to the public, and the harm to the legal profession. *In re Franke,* 345 N.W.2d 224, 228 (Minn.1984). Consistency is a goal, and the court looks to prior decisions for guidance. *Ruffenach,* 486 N.W.2d at 390; *In re Strid,* 487 N.W.2d 891, 895 (Minn.1992). The

1. These Rules provide:
   It is professional misconduct for a lawyer to:
   * * * * * *
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

   (d) engage in conduct that is prejudicial to the administration of justice; * * *.
   Minn.R. of Prof.Conduct 8.4.

court has stated it will, however, "examine each case individually and impose the discipline we believe appropriate based on the unique circumstances of each case." *Ruffenach*, 486 N.W.2d at 390. The factors to be examined include the number of clients harmed, the extent of the clients' injuries, prior misconduct and discipline and any mitigating circumstances. *In re McCoy*, 447 N.W.2d 887, 890 (Minn.1989).

In the present case, respondent challenges the referee's recommended sanction and suggests several factors in mitigation of his conduct.

■ First, respondent indicates he has suffered ill health and personal turmoil as a result of the disciplinary action and attendant publicity. Respondent contends this court should consider this factor in mitigation of his conduct. Indeed, this court has noted that although factors such as turmoil in one's personal and professional life neither excuse, justify, nor explain attorney misconduct, such problems are circumstances to be considered in imposing discipline. *In re Heffernan*, 351 N.W.2d 13, 15 (Minn.1984). However, this court recognizes personal health as a mitigating factor only when the personal health problems are *attendant to* the conduct, not when they are *a result of* the conduct. *See In re Knutson*, 405 N.W.2d 234, 236 (Minn. 1987) (noting that during the time of the misconduct, respondent had various family problems including his father's stroke, lingering illness, and death, his wife's cancer surgery, and his daughter's three hospitalizations). Thus, respondent's development of health problems subsequent to his conduct and the ensuing publicity does not operate as a mitigating factor in this case.

■ Second, respondent notes that he participates in significant community service activities and that his conduct in this case was motivated by a desire to "assist a young woman who was desperate to save her home." In regard to similar arguments, this court has stated that "although commendable, factors such as community service 'do not militate against the imposition of discipline in matters of serious ethical misconduct.'" *In re Stromwall*, 481 N.W.2d 60, 62 (Minn.1992) (quoting *In re Franke*, 345 N.W.2d 224, 229 (Minn.1984)). Further, although the court has considered a lack of intent to harm the client or to profit from the conduct as mitigating factors, we have also noted that misconduct resulting in no overt harm to a client still results in harm to the integrity of the legal system. *See Ruffenach*, 486 N.W.2d at 391; *In re Boyd*, 430 N.W.2d 663, 665 (Minn.1988); *In re Danna*, 403 N.W.2d 239, 241 (Minn.1987). Indeed, respondent's contention that his conduct, although "technically wrong," was without intent to defraud and that his good intentions somehow mitigate this conduct is a clear indication of his lack of understanding of the serious nature of his misconduct. It simply cannot be asserted that altering a fully-executed real estate document is not egregious conduct. The vast number of people who rely on the real estate recording system as a valid and efficient process rely on the genuineness of the documents recorded thereunder and on the honesty of the lawyers who prepare such documents. We therefore reject the suggestion that altering a fully-executed deed is a "technical violation," and we reaffirm that such conduct is entirely unacceptable under our rules of professional conduct.

Finally, respondent asserts that his admission of wrongdoing and commitment to further good ethics should be considered in mitigation of his conduct and that suspension is unnecessary in light of this commitment. Respondent also contends this court has imposed probation or public reprimand for conduct respondent asserts is considerably more serious than his own conduct.

This court has long recognized that the purpose of an attorney disciplinary proceeding is not to punish the respondent but to protect the public and the court and to serve as a deterrent against future misconduct. *In re Jensen*, 418 N.W.2d 721, 722 (Minn.1988); *Franke*, 345 N.W.2d at 228. Thus, we will consider whether the recommended sanction will suffice to correct future conduct of the respondent.

An examination of our prior disciplinary cases suggests that the referee's recommended sanction of temporary suspension is

warranted in a case of repeated misconduct. In *In re Getty*, a case respondent cites for the proposition that an admission of wrongdoing and commitment to good ethics is a mitigating factor, this court issued a reprimand rather than the recommended suspension where Getty committed multiple acts of misconduct but made numerous apologies and appeared to realize the error of his ways. 401 N.W.2d 668, 671 (Minn.1987). Due to Getty's apparent commitment to correcting future conduct, we did not feel it necessary to suspend Getty to achieve the goal of protecting the public. *Id.* We instead imposed the lesser discipline of a public reprimand. *Id.*

Respondent implies a similar scenario is before the court in the present case. What respondent fails to note, however, is that three years after this court's opinion in *In re Getty*, Getty came before the court a second time on a disciplinary charge, once again stemming from multiple incidences of misconduct. *See In re Getty*, 452 N.W.2d 694 (Minn.1990). In that case, we noted:

> When an attorney is before this court for a second time on a disciplinary charge, it is the general rule that the discipline to be imposed must be reviewed in light of the earlier misconduct.
>
> \*      \*      \*      \*      \*      \*
>
> We have held in the past that suspension followed by probation or disbarment is an appropriate sanction for situations where the misconduct in the second proceeding is a repeat of the earlier misconduct.

*Id.* at 698. In light of Getty's repeated misconduct, we determined that Getty failed to display a renewed commitment to professional conduct expected of a previously disciplined attorney and ordered that he be suspended from practice for a minimum period of sixty days. *Id.* at 699.[2]

This court has in other cases indicated similar disfavor with repeated conduct. In *Ruffenach*, we addressed a case in which the attorney made false and misleading disclosures on financial disclosure forms twice in a

period of three years. 486 N.W.2d at 391; *see also In re Ruffenach*, 370 N.W.2d 413 (Minn.1985). We noted that "[h]onesty and integrity are chief among the virtues the public has a right to expect of lawyers," and the fact that the attorney repeated the conduct a second time indicated he did not sufficiently appreciate the importance of these values. *Ruffenach*, 486 N.W.2d at 391. Ultimately, we held that the attorney's conduct warranted indefinite suspension for a minimum of 90 days. *Id.*

Similarly, in *In re Boyd*, we rejected the parties' stipulation to a four-month suspension and instead imposed a six-month suspension on an attorney who prepared a false warranty deed, backdated the deed, instructed his client to forge her deceased father's signature on the deed, and directed a notary public to certify the false signature. 430 N.W.2d 663, 663–64 (Minn.1988). We considered Boyd's three prior disciplinary admonitions in determining the appropriate sanction and noted that an admonition issued for an earlier incident of misrepresentation did not deter Boyd from making future misrepresentations regarding the warranty deed. *Id.* at 667. Based on these considerations, we balanced the mitigating factors of Boyd's admission of misconduct, cooperation in the proceedings and expressions of remorse against the apparent ineffectiveness of the prior admonitions, and we determined that a six-month suspension was warranted. *Id.*

■ In the present case, respondent's conduct consists of changing the name of the grantee on a fully-executed deed prior to recording. Respondent was previously publicly reprimanded and placed on two years of unsupervised probation for the conduct of adding property to an executed, recorded mortgage deed and re-recording it. *See In re Bernard*, 374 N.W.2d 721 (Minn.1985). To the extent that both incidences involved the altering of an otherwise fully-executed, valid real estate document and submitting the altered document for recording, the conduct is similar. Although a number of years have elapsed between the two disciplinary pro-

---

**2.** Moreover, in 1994, Getty again came before this court on similar charges of misconduct. Noting that "[i]nstead of remorse, respondent

has offered excuses," we ordered disbarment. *In re Getty*, 518 N.W.2d 18, 21 (Minn.1994).

ceedings, respondent's repeated misconduct suggests he did not sufficiently comprehend the gravity of the initial discipline. We thus consider this repeated conduct as an aggravating factor warranting a more harsh sanction than would be warranted if the conduct in question occurred as an isolated incident.

Having considered all mitigating and aggravating circumstances, we hold that respondent's misconduct warrants temporary suspension from the practice of law for a period of 90 days from the date of this opinion. Respondent shall comply in all respects with Rule 26, RLPR, but compliance with Rule 18, RLPR, for reinstatement after suspension is hereby waived.