STATE OF MINNESOTA

IN SUPREME COURT

A13-2305

Original Jurisdiction                                                                    Per Curiam

In re Petition for Disciplinary Action
against Lynne A. Torgerson, a Minnesota                        Filed:  October 21, 2015
Attorney, Registration No. 208322                              Office of Appellate Courts

_____

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Lynne A. Torgerson, Minneapolis, Minnesota, pro se.

_____

S Y L L A B U S

Respondent's misconduct, which included disobeying a court order, repeatedly making false statements, making unfounded accusations against a judge, acting belligerently toward a judge and court staff, and charging a nonrefundable flat fee, warrants a 60-day suspension from the practice of law.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against Lynne Torgerson in December 2013, alleging professional misconduct arising out of five client matters and a disciplinary proceeding involving

1

another attorney. The petition alleged that Torgerson made false statements, disobeyed a court order, acted belligerently toward a judge and court staff, engaged in conduct prejudicial to the administration of justice, and used a retainer agreement that required a client to pay a nonrefundable flat fee. Following an evidentiary hearing, the referee found that Torgerson had committed the alleged misconduct. The referee recommended a public reprimand for Torgerson.

In her appeal, Torgerson challenges nearly all of the referee's findings of fact and conclusions of law. We conclude that the referee's findings and conclusions regarding Torgerson's misconduct are not clearly erroneous. We do not credit two of the four mitigating factors recognized by the referee, however, because they do not qualify as mitigation. Due to the nature and severity of Torgerson's misconduct, we conclude that the appropriate discipline is a 60-day suspension from the practice of law.

I.

Torgerson was admitted to practice law in Minnesota in 1990. She has not been subject to prior discipline. We begin by summarizing the referee's findings of fact and conclusions of law.

*K.B. Matter*

Torgerson represented K.B. in a criminal matter in Ramsey County District Court. During trial, but outside the presence of the jury, Torgerson accused the judge of attempting to "intentionally prejudice [her] in the eyes of the jury." When jury deliberations began, the judge asked counsel for both sides to "be available within 10 minutes of a phone call. . . . [I]f there are questions from the jury, I'll have all of you

2

come back to the courtroom, hear the question, and we'll discuss what [the] response might be." Torgerson did not follow the judge's instructions, but instead began driving to Minneapolis to conduct an interview. When the jury sent a note to the judge revealing that it had received a document that neither party had admitted into evidence, the judge had his law clerk contact the attorneys. The law clerk asked Torgerson to return to court, but she refused the request, stating that she would not come back unless she received additional information. The clerk then placed the judge on the telephone, but Torgerson continued to request additional information before she would consider returning to the courthouse. When court resumed the next morning, the judge declared a mistrial. The judge then held Torgerson in direct and constructive contempt of court and fined her $250, which she timely paid.[1] Due to Torgerson's lack of compliance with the judge's requests, the jury reported to the courthouse for an unnecessary day of service.

Torgerson filed various pleadings after the trial alleging that the judge was biased, that another attorney had told her that the judge was treating her poorly for "political reasons," that "the judge's goal was to make [her] look bad in front of the jury," and that "[the judge] was trying to set [her] up." The referee found that Torgerson made these statements with knowledge that they were false or with reckless disregard of their truth.

---

[1] The court of appeals reversed and remanded Torgerson's contempt conviction after the postconviction court had denied relief. *Torgerson v. State*, No. A14-0693, 2015 WL 2456751, at *4-5 (Minn. App. May 26, 2015). However, the court of appeals' decision has no bearing on this disciplinary matter because the referee's findings of fact rest on Torgerson's underlying conduct, rather than her conviction.

3

The referee concluded that Torgerson's statement at trial and her statements in the post-trial filings violated Rules 3.5(h)[2] and 8.2(a)[3] of the Minnesota Rules of Professional Conduct ("MRPC"). The referee also determined that Torgerson's failure to return to court, and her behavior on the telephone with the judge and his clerk, violated Rules 3.4(c),[4] 3.5(h), and 8.4(d),[5] MRPC. Finally, the referee agreed with the Director that Torgerson's post-trial filings violated Rules 4.1,[6] 8.2(a), and 8.4(c),[7] MRPC.

*R.S. Matter*

Torgerson represented R.S. in an expungement proceeding. Torgerson filed a petition for expungement on behalf of her client, but she did not file a certificate of representation. *See* Minn. Gen. R. Prac. 104 (requiring the filing of a certificate of representation when an action is commenced). Due to Torgerson's failure to file the

---

[2] "A lawyer shall not engage in conduct intended to disrupt a tribunal." Rule 3.5(h), MRPC.

[3] "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." Rule 8.2(a), MRPC.

[4] "A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Rule 3.4(c), MRPC.

[5] "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Rule 8.4(d), MRPC.

[6] "In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law." Rule 4.1, MRPC.

[7] "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Rule 8.4(c), MRPC.

certificate, the Stearns County District Court failed to notify her when it changed R.S.'s hearing date.

While on her way to the courthouse, Torgerson called to inform court staff that she was running late. When court staff told her the court had rescheduled the hearing to a later date, Torgerson responded by "yelling and screaming" at two different staff members. One of the staff members notified the judge about Torgerson's call, which caused the judge to offer to recess his current trial and hear R.S.'s petition that afternoon. When the staff member called Torgerson to inform her of the judge's proposal, Torgerson responded by yelling at the staff member again.

The referee concluded that Torgerson's conduct violated Rules 4.4(a)[8] and 8.4(d), MRPC.

*W.W. Matter*

Torgerson represented W.W. in a criminal matter in Freeborn County. The State identified C.F., a Freeborn County deputy sheriff, as a potential witness in the case and stated that he had no criminal record. However, C.F. had previously pleaded guilty to disorderly conduct, Minn. Stat. § 609.72, subd. 3 (2014), for sexually touching his 18-year-old adopted son. Torgerson filed disciplinary complaints with the Office of Lawyers Professional Responsibility ("OLPR") against the prosecutors in W.W.'s case, County Attorney C.N. and Assistant County Attorney D.W., alleging that the two of them

---

[8] "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person . . . ." Rule 4.4(a), MRPC.

had filed a false pleading and had engaged in other misconduct while litigating W.W.'s case. We discuss those disciplinary proceedings further below.

During a hearing in W.W.'s case, Torgerson alleged that the prosecutors had knowledge of a "deal" reached in C.F.'s criminal case. The referee found that Torgerson's statement was false, because the Attorney General's office, not the Freeborn County prosecutors, had handled the criminal case against C.F. Later, Torgerson and D.W. exchanged a series of hostile emails. In one of those emails, Torgerson stated that D.W. was "consistently a liar and unethical" and had "[l]ied and protected a pedophile."

The referee concluded that Torgerson's conduct violated Rules 4.4(a) and 8.4(d), MRPC, and that Torgerson's statement at the hearing violated Rules 4.1 and 8.4(c), MRPC.

*S.T. Matter*

Torgerson represented S.T. in a criminal matter in Freeborn County. During a contentious omnibus hearing, Torgerson interrupted the judge multiple times. As a result, the judge imposed a $100 fine on Torgerson, which he later withdrew. Later, in a series of emails between Torgerson and D.W. (the same attorney as in the W.W. matter), the two attorneys were once again hostile to one another. In one email, Torgerson stated that D.W. had "lied to the Board of Professional Responsibility" and was "just a loser."

The referee concluded that Torgerson's conduct violated Rules 3.5(h), 4.4(a), and 8.4(d), MRPC.

6

*E.W. Matter*

Torgerson represented E.W. in two expungement proceedings. E.W. agreed to pay Torgerson a flat fee of $2,700. Torgerson's retainer agreement stated that the "flat fee is considered to be the property of Lynne Torgerson, Esq., upon payment of the fee(s), subject to a refund of only unearned fees." The agreement further stated that, "[i]f 24 hours pass from the time of the signing of the [agreement], all fees paid have been earned, even if the client later chooses not to hire the lawyer or chooses to terminate the lawyer's services or [if for] any other reason services are discontinued."

The referee concluded that Torgerson's retainer agreement violated Rule 1.5(b),[9] MRPC.

*D.W. Disciplinary Investigation*

Torgerson filed an ethics complaint against D.W., the Assistant Freeborn County Attorney who had prosecuted the W.W. and S.T. matters. The referee found that four of Torgerson's statements in connection with the ethics complaint were false. First, Torgerson falsely alleged that the victim in the C.F. misconduct case was under the age of 18 when the sexual contact occurred. Second, Torgerson falsely stated that D.W. had engaged in an ex parte communication with the judge in the W.W. matter. Third, Torgerson claimed, again falsely, that D.W. had failed to notify her when he issued a

---

[9]  "Fee agreements may not describe any fee as nonrefundable or earned upon receipt but may describe the advance fee payment as the lawyer's property subject to refund. Whenever a client has paid a flat fee . . . and the lawyer-client relationship is terminated before the fee is fully earned, the lawyer shall refund to the client the unearned portion of the fee." Rule 1.5(b)(3), MRPC.

subpoena to her client, W.W. Finally, Torgerson falsely asserted that, by subpoenaing W.W., D.W. had "forced [W.W.] under punishment of contempt" to show up in court and speak to state officials without counsel.

The referee concluded that Torgerson's conduct violated Rules 8.1(a),[10] 8.4(c), and 8.4(d), MRPC.

## II.

The Director bears the burden of proving professional misconduct by clear and convincing evidence. *In re Aitken*, 787 N.W.2d 152, 157-58 (Minn. 2010). Torgerson ordered a transcript of the disciplinary hearing, so the referee's findings of fact and conclusions of law are not conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility ("RLPR"). Nevertheless, "we give great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or in part on respondent's credibility, demeanor, or sincerity." *In re Wentzell*, 656 N.W.2d 402, 405 (Minn. 2003). With respect to a referee's conclusions of law, we interpret the Rules of Professional Conduct de novo and review the referee's application of the rules to the facts of the case for clear error. *Aitken*, 787 N.W.2d at 158. A finding or conclusion is clearly erroneous only if we are left with a "definite and firm conviction that a mistake has been made." *Wentzell*, 656 N.W.2d at 405 (quoting *In re Strid*, 551 N.W.2d 212, 215 (Minn. 1996)).

---

[10] "[A] lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly make a false statement of material fact." Rule 8.1(a), MRPC.

8

A.

We first must determine if, as Torgerson argues, the referee clearly erred in his findings of fact and conclusions of law with respect to the allegations of misconduct in the petition. Torgerson challenges nearly all of the referee's findings and conclusions, asserting that she did not commit any professional misconduct. The Director defends the referee's findings and conclusions. We address each of the challenged findings and conclusions below.

*K.B. Matter*

Torgerson argues that the referee clearly erred in finding that she made statements about the judge in the K.B. matter with the intent to manipulate the judge and in reckless disregard of their truth or falsity. She asserts what is in essence a good-faith defense, claiming that it was her genuine and sincere belief at the time that the judge was treating her inappropriately.

Regardless of Torgerson's subjective belief about the judge's actions, the referee's finding regarding the recklessness and manipulative nature of Torgerson's statement accusing the judge of attempting to "intentionally prejudice her in the eyes of the jury" was not clearly erroneous. As we have stated, an argument that an attorney feels some "statements are true is not germane because the standard for judging statements [under Rule 8.2(a)] is an objective one." *In re Nathan*, 671 N.W.2d 578, 585 (Minn. 2003); *see also In re Graham*, 453 N.W.2d 313, 322 (Minn. 1990) (stating that a "purely subjective standard is inappropriate"). Here, after considering the entire record from the disciplinary proceeding, including Torgerson's assertion that her statement was

9

reasonable in light of the actions taken by the judge during K.B.'s trial, the referee concluded that Torgerson made the statement "with intent to manipulate [the judge]." On this record, we cannot say that the referee's conclusion was clearly erroneous, especially in light of the testimony of the judge, who stated at Torgerson's disciplinary hearing that he "never treated Torgerson in a way that was not civil or not respectful."

In post-trial filings that, as far as we can tell, did not request any relief from the district court, Torgerson elevated her rhetoric against the judge, including making an allegation of judicial bias and saying that the judge "was trying to set [her] up." In one of the filings that Torgerson titled her "Offer of Proof," she alleged that another attorney told her that the judge was treating her poorly for "political reasons." The attorney who allegedly made this statement denied it. In fact, the attorney specifically testified that the statements Torgerson attributed to him were "not true," and that "there's just no way that the judge would treat her unfairly for any kind of political reasons." On this basis alone, there is ample evidence in the record to support the referee's finding that Torgerson made these statements with reckless disregard for their truth or falsity.

Moreover, the fact that Torgerson's post-trial filings were unconnected with any request for relief is itself evidence that she submitted them solely with the goal of questioning the "integrity of the judge." Rule 8.2(a), MRPC. A reasonable attorney under these circumstances would not have made such serious, unsubstantiated allegations against a judge. *See Graham*, 453 N.W.2d at 322 ("Impugning the integrity of judges and public legal officers by stating as certainties that which was based on nonexistent

evidence or *mere supposition* is conduct that reflects a reckless disregard for the truth or falsity of statements made." (emphasis added)).

Torgerson also argues that the referee's finding that she disobeyed the judge when she refused to return to the courthouse was clearly erroneous. Specifically, she argues that she was under no obligation to return when requested. This argument lacks merit. The judge's request was plain and unambiguous: "I'm going to ask that all of you folks be available within 10 minutes of a phone call." Rather than remain near the courthouse as instructed, Torgerson drove toward Minneapolis during rush hour to conduct an interview. When the judge's law clerk requested that she return to the courthouse, Torgerson was defiant, and, to use the clerk's words, "very argumentative." It made no difference that the judge then personally requested her return, as she remained defiant. Torgerson explained that it would take her an hour to return to the courthouse, which was much longer than the judge's stated expectation that the attorneys be available within 10 minutes. Torgerson's behavior did not result from a misunderstanding; indeed, Torgerson admitted to the Director that she "was trying to finagle [her] way around the situation." The referee therefore did not clearly err in finding that Torgerson disobeyed an obligation to the court, intentionally disrupted a tribunal, and engaged in conduct prejudicial to the administration of justice.

*R.S. Matter*

Torgerson challenges the referee's conclusion that she violated Rule 4.4(a) when she was abusive to court staff. Torgerson argues that she merely spoke to court staff, which does not qualify as a "means . . . to embarrass, delay, or burden a third person."

11

Rule 4.4(a), MRPC. As a factual matter, Torgerson did not merely speak with court staff; rather, in the words of one court employee, she "yell[ed] and scream[ed]" at them. From a legal perspective, Torgerson is wrong that her conversations with court staff were not a "means" to accomplish a goal. The term "means," as used in the context of Rule 4.4(a), describes "[a] method, a course of action, or an instrument by which an act can be accomplished or an end achieved." *American Heritage Dictionary* 1089 (5th ed. 2011). Her goal in scolding court staff was to persuade them through illegitimate means to move the hearing date to accommodate her schedule. However, court staff could not unilaterally reschedule the hearing, as evidenced by the fact that one of the staff members had to approach the judge to resolve the scheduling issue. Accordingly, the referee did not clearly err in finding that Torgerson's conduct had no substantial purpose other than to embarrass, delay, or burden court staff. *See* Rule 4.4(a), MRPC; *In re Ulanowski*, 800 N.W.2d 785, 789, 794-95 (Minn. 2011) (holding it was not clear error to find that making repeated insults violated Rule 4.4(a)).

Similarly, Torgerson argues that her actions did not violate Rule 8.4(d) because court staff would have acted no differently if she had been civil. Torgerson's argument is beside the point. We have never held that the phrase "prejudicial to the administration of justice" in Rule 8.4(d) requires a showing of changed circumstances or actual damage. Rather, the harm in question is to "the administration of justice" itself. "Disrespectful conduct directed at a tribunal can be prejudicial to the administration of justice," *In re Michael*, 836 N.W.2d 753, 765 (Minn. 2013), and the same principle applies when an attorney's disrespectful conduct is directed at court staff. Court staff are integral to

12

administering justice, and Torgerson's conduct, which was belligerent, was prejudicial to its administration.[11]

*W.W. Matter*

Torgerson argues that she did not make a false statement when she accused the prosecutors in the W.W. case of having knowledge of "a deal" involving C.F., a Freeborn County deputy sheriff. At a hearing, Torgerson stated:

> Your Honor, I just—from, you know, my perspective, I can't tell you how improper it seems to me to have a—somebody who was investigated for criminal sexual conduct, a detective, who did a deal in this court with—you know, with this—these prosecutors' knowledge, with the presiding judge, all prosecuting my client. And then the prosecutors are filing false pleadings in the case about his prior history.

Although aspects of Torgerson's statement were arguably ambiguous, the better reading, and the one adopted by the referee after considering all of the evidence, is that Torgerson's statement implied that C.N. and D.W. were involved in Deputy Sheriff C.F.'s prosecution and knowingly filed false pleadings in W.W.'s case. As interpreted, Torgerson's statement was false: neither of the attorneys were involved in C.F.'s prosecution because the Attorney General's office handled the matter. Accordingly, the record supports the referee's conclusion that neither C.N. nor D.W. was involved in

---

[11]  Torgerson makes the same argument with respect to the emails she sent to D.W. in the W.W. and S.T. matters. Similar to her conduct toward court staff, Torgerson's comments crossed the line between spirited advocacy and harassment when she told another attorney that he had "[l]ied and protected a pedophile," was "repugnant to the profession of law," was "a loser," and was "consistently a liar and unethical." These emails had no substantial purpose other than to "embarrass" and "harass" D.W. and were prejudicial to the administration of justice. *See* Rules 4.4(a), 8.4(d), MRPC.

13

C.F.'s case, and therefore the referee did not clearly err by finding that Torgerson made a false statement about their involvement in an alleged "deal."

*S.T. Matter*

During an omnibus hearing in the S.T. matter, Torgerson repeatedly interrupted the judge and D.W., the same prosecutor as in the W.W. matter, when she objected to D.W.'s oral argument and to the testimony of a witness. The judge repeatedly warned Torgerson not to interrupt D.W., but Torgerson did not heed the judge's warning. The referee concluded that Torgerson's conduct during the hearing was "intended to disrupt a tribunal." *See* Rule 3.5(h), MRPC.

Our review of the transcript from the hearing confirms the referee's conclusion. Over the course of the hearing, Torgerson became increasingly agitated and made repeated, improper objections to D.W.'s argument. When the judge asked to see a copy of a document containing drug-test results, Torgerson responded to the judge's request by saying "Dear, Lord." Torgerson's conduct throughout the hearing was both disruptive and disrespectful. Accordingly, the referee did not clearly err in finding that Torgerson's conduct violated Rule 3.5(h).

*E.W. Matter*

Torgerson's misconduct in the E.W. matter was limited to the terms of her retainer agreement, which stated that E.W. forfeited any right to recover unearned attorney fees 24 hours after he signed the agreement. Rule 1.5(b)(3) states that "[f]ee agreements may not describe any fee as nonrefundable or earned upon receipt but may describe the advance fee payment as the lawyer's property subject to refund." Rule 1.5(b)(3), MRPC.

14

Torgerson's retainer agreement, which made the flat fee nonrefundable after 24 hours rather than "on receipt," appeared to be a deliberate attempt to circumvent the rule. Even so, the agreement clearly violated Rule 1.5(b)(3)'s requirement that a client is entitled to a "refund" of "the unearned portion of a [flat] fee" when the "lawyer-client relationship is terminated before the fee is fully earned." The passage of 24 hours, by itself, does not "fully earn[]" a fee for an attorney, regardless of the language in a retainer agreement. Thus, the referee did not clearly err by concluding that the agreement violated Rule 1.5(b)(3).

*D.W. Disciplinary Investigation*

In two letters that she sent to the Director during D.W.'s disciplinary investigation, Torgerson made four statements that the referee found to be false. The false statements related to the age of the victim in C.F.'s case, an alleged ex parte communication between the judge and D.W. in W.W.'s case, and a dispute over whether D.W. issued a subpoena to W.W. in a companion case. Torgerson argues that each of the statements reflected her honest, good-faith belief about the relevant facts, and that none was knowingly false. There is adequate evidence in the record to support each of the referee's findings of dishonesty.

The first statement is that C.F.'s victim "was under age 18." The criminal complaint stated that the police began an investigation in response to "allegations of inappropriate contact between [C.F.] . . . and [C.F.'s] 18-year-old adopted son ('Victim')." Torgerson now admits that the victim was in fact over the age of 18 when

15

the sexual contact occurred, but continues to adhere to her position that her statement was not "knowingly" false.

For support, Torgerson relies on a letter she sent to the Director, in which she claims that she originally thought the victim was a minor. However, the letter itself contains inconsistencies with the other letters that she wrote to the Director. The letter in question states that she "originally thought [that C.F.'s] behavior was a felony" and only later did she find out that it was a misdemeanor. However, in a letter to the Director about one year earlier, Torgerson referred to the *misdemeanor* charge against C.F., asserting that the charging decision was improper because the underlying crime "was actually" a felony. The inconsistencies in Torgerson's letters undermine the reliability of the letter in which she claimed that she believed the victim was a minor. The referee was free to give the letter little weight in making his findings and conclusions.

Although it is not entirely clear when Torgerson became aware of the victim's true age, Torgerson's testimony at the disciplinary hearing confirms that she possessed the documentation necessary to make that determination before writing any of her letters. Specifically, Torgerson admitted at her disciplinary hearing that she received a copy of C.F.'s criminal complaint before she first wrote to the Director. The criminal complaint described the victim as C.F.'s "18-year-old adopted son." In light of this fact, the referee's conclusion that Torgerson's statement was knowingly false and involved dishonesty, fraud, deceit, or misrepresentation was not clearly erroneous. Rules 8.1(a), 8.4(c), MRPC.

16

The second statement was that D.W. had an improper ex parte communication with the judge in the W.W. matter that caused the court to schedule another trial first on its docket. Torgerson explains that her statement was one "of belief" and that she has adequately explained the objective basis for that belief, which was an unusual change in the court's schedule on the date scheduled for trial. Regardless, the referee's finding was not clearly erroneous. D.W. testified that Torgerson's allegations of an ex parte conversation with the judge were "patently false" and that a simple explanation existed for the scheduling decision identified in Torgerson's letter: court staff had already scheduled another trial to proceed first.

The final two statements relate to an alleged subpoena issued to W.W in a companion drug case. Although it is true that W.W. testified that she had received a subpoena, the referee was entitled to accept D.W.'s testimony that he never issued a subpoena for W.W. nor called her to testify as a witness in the other case. In fact, the referee's conclusion appears to have turned on two key facts: W.W. "was unable to produce the subpoena she alleged to have been served on her," and Torgerson "produced no record of a subpoena having been issued." Torgerson now relies on W.W.'s unsubstantiated testimony that the subpoena disappeared after a police officer "came into [her] home with a blank search warrant" while she was incarcerated. The referee did not clearly err in rejecting W.W.'s account and accepting D.W.'s testimony.

In sum, we conclude that each of Torgerson's challenges to the specific findings and conclusions of professional misconduct fails. The record adequately supports the referee's conclusions that Torgerson violated a myriad of rules of professional conduct in

17

five separate client matters and in the course of another attorney's disciplinary investigation.

B.

Before we consider the appropriate discipline, we must first review the mitigating and aggravating factors found by the referee. As aggravating factors, the referee identified both Torgerson's substantial experience in the practice of law and Torgerson's failure to recognize the wrongfulness of her actions. Torgerson challenges the factual basis of only the second of the two factors.

Torgerson argues that the referee's finding that she lacked recognition of the wrongfulness of her actions was clearly erroneous because she has always admitted that she did not act in accordance with Minnesota's Professionalism Aspirations, even if she has consistently denied that her conduct violated the Rules of Professional Conduct. In addition, she would have us construe her arguments, most of which ask us to interpret the rules unreasonably narrowly, as a good-faith attempt to modify existing law.

Although Torgerson was entitled to defend herself against the Director's allegations, the referee was in the best position to observe her demeanor, and specifically, the sincerity of the apologies for her behavior. *In re Ulanowski*, 800 N.W.2d 785, 804 (Minn. 2011) (stating that the referee was in the "best position" to assess whether an attorney's acknowledgement of misconduct "was sincere"). On that point, the referee found that, although Torgerson was "sensitive to the manner in which she was treated," she showed "little sensitivity for those at whom her actions were directed in the various

18

incidents here involved." We cannot say that the referee made a clear error in reaching this conclusion.

In addition to the two aggravating factors, the referee found several mitigating factors, including Torgerson's lack of prior disciplinary history, the modifications she made to her retainer agreement, and the fact that others may have provoked her to make the statements underlying some of her misconduct. The Director challenges the referee's reliance on Torgerson's lack of disciplinary history as a mitigating factor. Although we have said that prior disciplinary history may be an aggravating factor, *see In re Ulanowski*, 834 N.W.2d 697, 704 (Minn. 2013), an attorney's lack of disciplinary history is not a mitigating factor, *In re Rebeau*, 787 N.W.2d 168, 176 (Minn. 2010). Thus, the Director is correct that the referee erred in relying on Torgerson's lack of disciplinary history as a mitigating factor.

The referee's reliance on one other mitigating factor was also erroneous. The referee found that Torgerson was entitled to mitigation because she subsequently changed the language in her retainer agreement. It is our expectation that attorneys will comply with the Rules of Professional Conduct, and consequently adhering to the requirements of the rules, like cooperating with the disciplinary process, is not something that an attorney can rely on to mitigate prior misconduct. *See In re Albrecht*, 779 N.W.2d 530, 538-39 (Minn. 2010) ("We have repeatedly stated that mere compliance with the rules of professional misconduct is not a mitigating factor in attorney discipline cases.").

19

III.

The remaining issue is the appropriate discipline for Torgerson's misconduct. When determining the appropriate sanction for professional misconduct, we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *Ulanowski*, 834 N.W.2d at 701. The referee recommended a public reprimand. Torgerson asks this court to impose no discipline. The Director requests an indefinite suspension with no right to petition for reinstatement for a minimum of 6 months. "This court places great weight upon the referee's recommendations, but the final responsibility for determining appropriate sanctions rests with this court." *In re Evans*, 461 N.W.2d 226, 228 (Minn. 1990).

*Nature of the Misconduct*

The bulk of the referee's findings of misconduct follow a central theme: Torgerson lacked professionalism in dealing with judges, court staff, and other attorneys. She also repeatedly made knowingly false statements in several matters. Contrary to Torgerson's view of her own conduct, her actions went far beyond a lack of civility. The "bounds of proper professional behavior," we have said, require that, at minimum, attorneys "comply with court rules and orders, develop a courteous and civil rapport with opposing counsel, and maintain respect for the bench." *In re Jensen*, 468 N.W.2d 541, 545 (Minn. 1991). Moreover, "making misrepresentations demonstrates a lack of honesty and integrity, and warrants severe discipline." *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012).

Torgerson's behavior bears some similarity to *In re Getty*, in which we admonished an attorney for failing to "show . . . restraint and . . . respect for the judicial system even while disagreeing strongly with it or its decisions." 401 N.W.2d 668, 671 (Minn. 1987). We said in *Getty* that "there is a line that should not be crossed and respondent has crossed it." *Id.* Our statement in *Getty* applies equally here. The record in this case is filled with evidence of an attorney "who simply must learn to control [her] emotions while in a courtroom." *See id.* But unlike *Getty*, Torgerson is not an inexperienced attorney. *Id.* She has been practicing law in Minnesota for 25 years.

Torgerson's misconduct is also more serious than in *In re Clemons*, in which we ordered a 30-day suspension for, among other things, "rude, discourteous and disrespectful language in a courtroom directed at a probation officer." 530 N.W.2d 537, 537 (Minn. 1995). In this case, Torgerson was disrespectful to judges, court staff, and other attorneys across multiple matters.

Perhaps most closely analogous to this case is *In re Graham*, a disciplinary matter in which we suspended an attorney for 60 days after the attorney repeatedly accused a judge of being part of a political conspiracy against his clients. 453 N.W.2d 313, 313-18 (Minn. 1990). There are several similarities between this case and *Graham*. Like Torgerson, Graham had substantial experience in the practice of law. In addition, based on a comment allegedly made by another attorney and a perceived change in the judge's demeanor, Graham accused the judge presiding over one of his cases of bias, specifically from "political connections and illicit persuasion." *Id.* at 318-19. The referee in *Graham*, like the referee in this case, concluded that the attorney made the statements

21

accusing the judge of bias with reckless disregard for their truth or falsity. *Id.* at 320. Although *Graham* did not include the additional misconduct of abuse of court staff, use of an improper retainer agreement, and failure to comply with a judge's request to return to the courthouse, *Graham* provides the closest analogue to the misconduct that occurred in this case.

*Cumulative Weight of the Disciplinary Violations*

We treat a brief lapse in judgment or a single, isolated incident differently from cases involving multiple instances of misconduct occurring over a substantial period. *Ulanowski*, 834 N.W.2d at 703. "The cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *Id.* (alteration omitted) (quoting *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004)).

Torgerson's misconduct occurred in five different cases and in the course of a disciplinary matter involving another attorney, all over the course of approximately 20 months. Together, the length and variety of Torgerson's misconduct distinguishes this case from others involving a "brief lapse in judgment or a single, isolated incident." *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011).

*Harm to the Public and the Legal Profession*

Torgerson's misconduct wasted judicial resources and potentially harmed her clients. Her refusal to return to court in the K.B. matter required a jury to reconvene unnecessarily for another day of court, and her outbursts and unsubstantiated filings consumed the valuable time and energy of judges and court staff. As we have

22

recognized, "[a]n attorney does not advance the client's cause . . . by making unfounded allegations about the judge's decision-making process. Here, [Torgerson's] verbal and written attacks on the judiciary and its personnel only could have harmed [her] client." *Jensen*, 468 N.W.2d at 546. Moreover, Torgerson's unprofessional actions and demeanor "reflect adversely on the bar, and are destructive of public confidence in the legal profession." *In re Shaughnessy*, 467 N.W.2d 620, 621 (Minn. 1991).

Accordingly, we hereby order that:

1.     Respondent Lynne A. Torgerson is suspended from the practice of law for a minimum of 60 days, effective 14 days from the date of the filing of this opinion.

2.     Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3.     Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.

4.     Respondent shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days before the end of the suspension period, respondent files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that she is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has complied with any other conditions for reinstatement imposed by the court.

5.     Within 1 year of the date of the filing of this order, respondent shall file with the Clerk of Appellate Courts and serve upon the Director proof of successful completion of the professional responsibility portion of the state bar examination. Failure

to timely file the required documentation shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR.

6.    Upon reinstatement to the practice of law, respondent shall be subject to probation for 2 years, with the following conditions:

(a)    Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation. Respondent shall promptly respond to the Director's correspondence by its due date.  Respondent shall provide the Director with a current mailing address and shall immediately notify the Director of any change of address.  Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention.  Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify respondent's compliance with the terms of this probation; and

(b)    Respondent shall abide by the Minnesota Rules of Professional Conduct.